```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

KENT W. NEELY                :          CIVIL ACTION
                             :
         v.                  :
                             :
UNITED STATES POSTAL SERVICE :          NO. 03-6566


_____  MEMORANDUM AND ORDER


McLaughlin, J.                          December 12, 2007


        The plaintiff, a former Postal Service employee, worked

at the Bulk Mail Center in Northeast Philadelphia.  He was fired

in 2002 for the articulated reasons of chronic lateness and

absenteeism.  He alleges that the United States Postal Service

discriminated against him on the basis of race and sex, in

violation of Title VII of the Civil Rights Act of 1964.  The

plaintiff also claims that he was harassed and retaliated against

for his complaints about the discrimination, that the defendant

violated his rights under the Family and Medical Leave Act, and

that his rights under Merit Systems principles and his due

process rights have been violated.

        The defendant has moved for summary judgment.  The

Court will grant summary judgment on the discrimination and

retaliation claims under Title VII because the plaintiff has not

stated a prima facie case of discrimination or retaliation.  The

Court will grant summary judgment on the FMLA claim because the

plaintiff was not entitled to FMLA leave on the dates he claims
and because the decision of the Administrative Judge in the Merit
Systems Protection hearing was not arbitrary and capricious.  The
Court will grant summary judgment on the plaintiff's Merit
Systems, and due process claims because the decision of the
Administrative Judge in the Merit Systems Protection hearing was
not arbitrary and capricious.

I.   Facts

          The Court views the record in the light most favorable
to the plaintiff.[1]  The following facts are undisputed.

          The plaintiff, Kent Neely, is an African-American male.
He worked for the defendant, the United States Postal Service
("USPS"), at the Bulk Mail Center in Northeast Philadelphia,
starting in October 1994.  The USPS issued the plaintiff a
proposed Notice of Removal on February 4, 2002, following a
fourteen-day suspension for failure to maintain a regular
schedule and a long history of discipline for absenteeism and
tardiness.  Memorandum of Law in Support of Defendant's Motion

---

          [1]   On a motion for summary judgment, a court must view the
evidence and draw reasonable inferences therefrom in the light
most favorable to the party opposing summary judgment.  See,
e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).
Summary judgment is proper if the pleadings and other evidence on
the record "show that there is no genuine issue as to any
material fact and that the moving party is entitled to a judgment
as a matter of law."  Fed. R. Civ. P. 56(c).

for Summary Judgment Ex. 1, Neely Dep. Tr. at 16, 19; Ex. 30.[2]

The USPS uses a system of progressive discipline. Discussions and letters of warning are followed by a seven-day suspension, a fourteen-day suspension, and then removal. USPS supervisors have a good deal of discretion in initiating discipline. Clerks like the plaintiff report to a Supervisor of Distribution Operations ("SDO"); each SDO reports to a Manager of Distribution Operations ("MDO"). In each instance of discipline, an SDO issues the discipline, and a higher level supervisor reviews and concurs in any discipline greater than a letter of warning. Def's. Br. Ex. 3, Holmes Dep. Tr. at 61; Ex. 2, Bates Dep. Tr. at 22, 28-30; Oral Arg. Tr. at 12-16, Sept. 27, 2007.

The plaintiff frequently filed grievances after he received discipline, which sometimes resulted in the discipline being withdrawn or reduced on condition that he was not cited for other discipline problems for a period of time. A chronology of the plaintiff's disciplinary history follows.

On January 26, 1996, the plaintiff received a Letter of Warning for failure to maintain a regular schedule issued by Supervisor Bill Harper, a white male. Def's. Br. Ex. 1, Neely Dep. Tr. at 72-73.

On May 3, 1997, the plaintiff received a Letter of Warning for failure to maintain a regular schedule issued by

---

[2]    Hereafter "Def's. Br."

3

Supervisor Howard Riley, an African-American male.  The plaintiff filed a grievance, and the parties agreed that the letter would be reduced to a discussion if the plaintiff had fewer than three unscheduled latenesses in a three-month period.  Id. Ex. 6.

On November 1, 1997, the plaintiff received another Letter of Warning for failure to maintain a regular schedule issued by Mr. Riley.  The plaintiff filed a grievance, and the settlement provided that any absences between the date of the letter of warning and the date of settlement would not be used in future discipline.  Id. Ex. 8.

On June 30, 1998, the plaintiff received a seven-day suspension for failure to maintain a regular schedule issued by Supervisor Donna Hall, an African-American female.  The plaintiff filed a grievance that went through the arbitration process, and the arbitrator upheld the discipline.  Id. Ex. 10.

On January 22, 1999, the plaintiff received a fourteen-day suspension for failure to maintain a regular schedule issued by Supervisor Donna Hall, an African-American female, with Simona Brickers, an African-American female, concurring.  The plaintiff filed a grievance and the suspension was rescinded.  Id. Ex. 12.

On October 27, 1999, the plaintiff received a Letter of Warning for failure to maintain a regular schedule issued by Supervisor Maria Diaz, a Hispanic female.  The plaintiff filed a grievance; the settlement provided that the letter of warning

4

would be reduced to a discussion in six months if not cited in further discipline. Id. Ex. 14.

On March 8, 2000, the plaintiff received a seven-day suspension for failure to maintain a regular schedule issued by Maria Diaz, with Joe Bates, a white male, concurring. The plaintiff filed a grievance; the settlement provided that suspension would be reduced to letter of warning in six months if not cited in further discipline. Id. Ex. 16.

On September 14, 2000, the plaintiff received a fourteen-day suspension for failure to maintain a regular schedule issued by Maria Diaz, with Joe Bates concurring. The plaintiff filed a grievance, and the settlement provided that suspension would be expunged if the plaintiff became regular in attendance and there was no further discipline prior to June 1, 2001. Id. Ex. 18.

On January 13, 2001, the plaintiff received a fourteen-day suspension for failure to maintain a regular schedule issued by Supervisor Neel Holmes, an African-American male, with Eileen Ansuini, a white female, concurring. The suspension listed thirty-two absences or incidences of lateness between September 6, 2000, and January 3, 2001. The plaintiff filed a grievance, and an arbitrator upheld the discipline at a grievance hearing. Id. Ex. 20.

On June 7, 2001, the plaintiff filed a complaint with

the EEOC, complaining that he had been discriminated against on the basis of race when he received the January 13, 2001, suspension.  Administrative Judge Jose Perez held a hearing on the EEO claim, and on August 21, 2002, found that the plaintiff had not established a prima facie case of race discrimination. The plaintiff appealed the ruling, and the EEOC affirmed Judge Perez's decision on September 23, 2003.  Id. Ex. 21; Ex. 23; Ex. 24.

The plaintiff did not serve the 2001 fourteen-day suspension until January 19, 2002, through January 31, 2002.  He was late for work on February 2, 2002, his first day back after the suspension.  During the year between when he received the suspension and when he served the suspension, the plaintiff had eighty-three unscheduled absences.  Id. Ex. 27; Ex. 28.

On February 4, 2002, supervisor Neel Holmes had a "day in court" with the plaintiff to discuss his absences.  Although Mr. Holmes excused nine of the absences, he issued a Notice of Proposed Removal based on sixteen other absences in the previous four months.  Ernestine Geary, an Acting Manager of Distribution Operations and an African-American female, concurred.  The plaintiff responded through his union representative.  On March 28, 2002, after considering the plaintiff's response and his disciplinary record, MDO Joe Bates issued the Letter of Decision officially removing the plaintiff from the USPS.  Id. Ex 30; Ex.

6

31.

The plaintiff appealed the removal decision to the
Merit Systems Protection Board ("MSPB") on May 2, 2002.  In the
appeal, he claimed that he:  had been discriminated against on
the basis of race and sex, had been sexually harassed, had been
retaliated against for his harassment and discrimination
complaints, and had his Family and Medical Leave Act ("FMLA")
rights abused.  Administrative Judge Michael Rudisill held a
hearing on July 17, 2002, and on September 1, 2002, found that
the plaintiff was not entitled to FMLA leave and that he had not
established his claims of race discrimination or retaliation.
The plaintiff appealed, and the MSPB denied his petition for
review.  Id. Ex 32; Ex. 33; Ex. 34.

The plaintiff's race discrimination claims are founded
on his contention that two of his white colleagues at the Bulk
Mail Center, Joe Masterson and Ron Dever, who had similar or
worse discipline records, were treated more leniently.  The USPS
fired Mr. Masterson after the plaintiff was removed; Mr. Dever
still works at the Bulk Mail Center.  Plaintiff's Memorandum of
Law in Opposition to Defendant's Motion for Summary Judgment at
13; Ex. 4, Bates Dep. Tr. at 114.[3]

The facts supporting the plaintiff's gender
discrimination and harassment claims are less clear.  In January,

---

[3]     Hereafter "Plf's. Opp."

2002, the plaintiff sent two letters to Alexander Lazaroff, a Philadelphia District Manager at the USPS, complaining about sexual harassment from two of his female supervisors, Maria Diaz and Simona Brickers, during 1997 through 1999.  In each letter the plaintiff described a warm relationship with romantic potential that ended when he informed each woman that he was not interested in a romantic relationship.  There is no suggestion that any such romantic relationship was desired; neither woman ever made a pass at the plaintiff or asked him out on a date. The plaintiff alleges that after he told them of his lack of interest, each woman began to treat him poorly, issuing unfounded disciplinary notices.  Def's. Br. Ex. 25; Ex. 26; Oral Arg. Tr. at 31-32, Sept. 27, 2007.

The letters form the basis of the plaintiff's harassment, gender discrimination, and retaliation claims. However, it does not appear that any of the supervisors involved in the dismissal decision knew about the letters at the time of the plaintiff's removal.  Rather, the plaintiff argues, the inappropriate discipline issued by the two women played an important role in the progressive discipline that led to his dismissal.  Diaz and Brickers put the plaintiff on "emergency placement" and recommended that he receive a fitness for duty evaluation, respectively.  He contends that "Diaz and Brickers engaged in a continuous effort to harass, discipline and

ultimately set up a situation where Neely could be removed, simply because he was not interested in any romantic relationship with either of them."  Def's. Br. Ex. 34 at 39-40; Plf's. Opp. at 21; Ex. 1; Ex. 3.

The plaintiff further grounds his retaliation claims in his frequent grievances and complaints within the USPS and his EEO filings, as well as complaints to outside officials.  On August 30, 1999, the plaintiff was placed on emergency unpaid leave due to misconduct arising out of an altercation with a supervisor and another clerk.  He complained to Congressman Chaka Fattah's office, and one of Representative Fattah's aides interceded on his behalf.  According to the aide, there was not enough evidence to warrant a removal, and the plaintiff returned to work after twenty-five days, on September 24, 1999.  On September 8, 1999, the plaintiff filed another EEO complaint, followed by complaints to the USPS Ethical Conduct Officer, the USPS Board of Governors, the United States Commission on Civil Rights, his union, and the President of the United States.  The plaintiff contends that he received discipline within a "very short period of time" after these complaints.  He also cites an e-mail from Joseph Marquis, a labor relations officer at the USPS, to Joseph Bates and Simona Brickers, on January 4, 2000. The e-mail said "We need to deal with [Neely] every time and come away with a progressive step.  Not get frustrated and let it pass

then try to nail [him] months later."  Def's. Br. Ex. 25; Plf.'s
Opp. Ex. 13; Ex. 1; Ex. 14; Ex. 19.

        The plaintiff also claims that the USPS violated his
rights under the FMLA by denying him leave for certain days when
he was eligible.  He suffered from chronic sinusitis and sleep
apnea, conditions protected under the FMLA, and had a doctor's
certification that he would need leave.  The USPS requested
recertification, which the plaintiff did not provide.  Plf's.
Opp. Ex. 41; Ex. 56; Ex. 57; Ex. 58; Ex. 60.


II.  Analysis

            The plaintiff's claims are:  1) race discrimination
under Title VII of the Civil Rights Act of 1964; 2) gender
discrimination under Title VII; 3) harassment on the basis of
race and/or gender under Title VII; 4) retaliation under Title
VII; 5) violations of his rights under the Family Medical Leave
Act; 6) discrimination on the basis of race and/or gender and
retaliation under merit systems principles; 7) retaliation for
whistleblowing under merit systems principles; and 8) violations
of due process under merit systems principles.

        The Court will grant summary judgment in favor of the
defendant on the discrimination, harassment, and retaliation
claims because the plaintiff has not made out a prima facie case
of discrimination or retaliation.  The Court will grant summary

judgment in favor of the defendant on the FMLA claims because the plaintiff was not entitled to FMLA leave on the dates he cited and the Administrative Judge's decision as to one of the dates was not arbitrary and capricious.  The Court will grant summary judgment in favor of the defendant on the remaining merit systems claims because the Administrative Judge's decision on these issues was not arbitrary and capricious.

    A.   Count I:  Race Discrimination

        Count I of the complaint alleges that the defendant violated Title VII by discriminating against the plaintiff on the basis of his race.  He claims that the USPS's decision to fire him was racially motivated, and that any non-racial reasons USPS provides are false and pretextual.

        Title VII claim analysis is laid out in McDonnell Douglas v. Green, 411 U.S. 792 (1973).  The plaintiff must first establish a prima facie case of discrimination.  A plaintiff can establish a prima facie case of race discrimination by showing that:  1) he is a member of a protected class; 2) he was subject to an adverse employment action; and 3) similarly situated members of other racial classes were treated more favorably or that other circumstances exist that give rise to an inference of unlawful discrimination.  Jones v. School Dist. of Phila., 198 F.3d 403, 410-12 (3d Cir. 1999).

11

If the plaintiff can establish a prima facie case, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action. If the defendant can do so, then the burden shifts back to the plaintiff to show that the defendant's articulated reason is actually a pretext for discrimination.  Id. at 410.  To defeat summary judgment, the plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either 1) disbelieve the employer's articulated legitimate reasons; or 2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).  Fuentes "places a difficult burden on the plaintiff."  Kautz v. Met-Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005).

The parties do not dispute that the plaintiff has made out the first two elements of a prima facie case of race discrimination.  The plaintiff is a member of a protected class and he was subject to an adverse employment action when the USPS removed him.  They disagree as to whether the plaintiff raises an inference of discrimination.  The plaintiff argues that the USPS treated white clerks who had lateness problems more favorably than the plaintiff.  The defendant contends that it removed the plaintiff for chronic lateness and absenteeism, in accordance

12

with its progressive discipline procedures, and that the white employees cited by the plaintiff are not similarly situated.  The Court agrees that the two other employees are not similarly situated and that the plaintiff's situation does not give rise to an inference of discrimination.

The plaintiff contends that the USPS disciplined him more severely than two white employees, Ronald Dever and Joseph Masterson, whose conduct was worse than the plaintiff's.  Dever and Masterson, like the plaintiff, were assigned to Tour Three at the Bulk Mail Center.  The three men had similar attendance problems (lateness and absenteeism leading to letters of warning and suspensions, some of which were settled).  Masterson received seven suspensions of seven or fourteen days between 1997 and 2002, and was removed from the USPS on April 13, 2004, after failing to comply with a last chance agreement.  Dever received five suspensions of seven or fourteen days between 2000 and 2004. He still works at the USPS.  The two men often missed multiple hours of their shifts, or entire shifts.  The plaintiff often received discipline for being minutes late.  Plf's. Opp. Ex. 4, Bates Dep. Tr. at 100.; Ex. 2, Neely Dep. Tr. at 110, 172; Ex. 50; Ex. 51; Ex. 52; Ex. 53.

The plaintiff argues that the three clerks are similarly situated:  they were all assigned to Tour Three at the Bulk Mail Center, MDO Bates was the manager for all three men,

Joseph Marquis was the labor relations representative responsible for all BMC employees, and they had similar attendance problems. The plaintiff acknowledges that the three had different immediate supervisors (SDOs) but contends that all significant disciplinary actions required concurrence by an MDO.  For the plaintiff, Dever, and Masterson, that MDO was often Bates.  Id. Ex. 4, Bates Dep. Tr. at 100, 114; Ex. 20, Marquis Dep. Tr. at 29-34, 57-58; Ex. 24; Ex. 46; Ex. 47.

The defendant argues that the plaintiff, Dever, and Masterson were not similarly situated.  In the USPS the SDO initiates all discipline; the MDO is only involved as a concurring official and cannot propose discipline.  SDOs have a great deal of discretion in initiating discipline and settling complaints:  there is no set rule at the USPS about how many absences subject an employee to a particular level of discipline or how much a settlement can reduce a disciplinary offense.  Neel Holmes, the plaintiff's supervisor at the time of his fourteen-day suspension and removal, was never the supervisor for Dever or Masterson.  In addition, MDO Bates was not the concurring official on the plaintiff's fourteen-day suspension or on his removal.  Bates did approve the notice of proposed removal after it had been issued by Mr. Holmes and concurred in by Earnestine Geary.  Plf's. Opp. Ex. 42.

The defendant also contests the plaintiff's

characterization of Dever and Masterson's disciplinary problems
as far more severe than the plaintiff's.  The plaintiff was
disciplined ten times between 1996 and 2002, Mr. Dever was
disciplined nine times between 1995 to 2004, and Mr. Masterson
was disciplined nine times between 1997 and 2004.  Def's. Br. Ex.
3, Holmes Dep. Tr. at 88; Ex. 1; Ex. 6; Ex. 8; Ex. 10; Ex. 12;
Ex. 14; Ex. 16; Ex. 18; Ex. 19; Ex. 20; Ex. 30; Ex. 31; Plf's.
Br. Ex. 50; Ex. 51; Ex. 52.

        The analysis of whether someone is similarly situated
to the plaintiff "requires the court to undertake a fact-
intensive inquiry on a case-by-case basis rather than in a
mechanistic and inflexible manner."  Monaco v. Am. Gen. Assurance
Co., 359 F.3d 296, 305 (3d Cir. 2004).  In addition to job
function and seniority level, the Court must examine "other
factors relevant to the particular workplace."  Id.

        The identity and role of the supervisor is a key part
of this inquiry.  Decisions made by different supervisors about
different employees are not usually comparable enough to raise an
inference of discrimination.  Supervisors may exercise their
discretion differently.  Taylor v. Procter & Gamble Dover Wipes,
184 F. Supp. 2d 402, 410 (D. Del 2002), aff'd 53 Fed. App'x 649
(3d Cir. 2002).  See Radue v. Kimberly-Clark Corp., 219 F.3d 612,
617-18 (7th Cir. 2000) (observing that a determination whether
two employees are similarly situated "normally entails a showing

15

that the two employees dealt with the same supervisor"); <u>Ware v. Frank</u>, 1990 WL 14478 at *4 (E.D. Pa. Feb. 15, 1990) ("In order to be similarly situated, other employees must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's, without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it." (quoting <u>Mazzella v. RCA Global Comm'cns, Inc.</u>, 642 F. Supp. 1531, 1547 (S.D.N.Y 1986))).

     The plaintiff argues that the identity of the supervisor is not the dispositive factor; rather, it is the identity of the decision maker.  According to the plaintiff, MDO Bates was the primary decision maker in the discipline for the plaintiff, Dever, and Masterson.  In the supervisory structure at the USPS, however, direct supervisors have a great deal of discretion in initiating discipline.  Although an MDO must sign off on severe discipline, that does not make the MDO the primary decision maker; rather, it is the SDO who makes the primary disciplinary decisions.  Neel Holmes, the SDO who initiated both the final suspension and the plaintiff's removal, never served as either Dever or Masterson's supervisor.  He never initiated discipline against them and was never involved in the grievance process with them.  MDO Bates oversaw twelve SDOs, three mail

16

flow controllers, and 250 employees on Tour 3 at the Bulk Mail
Center.  His concurrence in some of the discipline received by
several Tour Three employees does not make him the primary
decision maker or supervisor for purposes of deciding whether
Dever and Masterson are similarly situated to the plaintiff.
Def's Br. Ex. 3, Holmes Dep. Tr. at 88; Ex. 2, Bates Dep. Tr. at
22.

   Because of the amount of discretion afforded to
supervisors in initiating discipline and the fact that Dever and
Masterson had different supervisors than the plaintiff, the
plaintiff has not shown that Dever and Masterson were similarly
situated to him.  The discipline the three men received is not
"sufficiently comparable to raise an inference of
discrimination."  Taylor, 184 F. Supp. 2d at 410.

   The record has not shown that other circumstances exist
that give rise to an inference of unlawful discrimination.  Jones
v. School Dist. of Phila., 198 F.3d 403, 410-11.  The plaintiff
knew that coming to work on time was a job requirement, but he
frequently came in late or missed shifts without an excuse.  At
the time he received his second fourteen-day suspension in
January of 2001, the plaintiff had received discipline for
failure to maintain a regular schedule at least eight times.  The
plaintiff's long and poor disciplinary history and the fact that

his supervisor was also African American[4] combine to defeat his claim that his dismissal from the USPS gives rise to an inference of race discrimination.  Def's. Br. Ex. 1, Neely Dep. Tr. at 77-78.

The plaintiff has not made out a prima facie case of race discrimination, and the Court will grant summary judgment to the defendant.

---

B.  Count II:  Gender Discrimination

The defendant has moved for summary judgment on the plaintiff's gender discrimination claim on two grounds:  first, that the plaintiff has failed to exhaust his administrative remedies; and second, that the plaintiff fails to make out a prima facie case of gender discrimination.

1.  Exhaustion

The plaintiff's complaint did not specify which events

---

[4]     Neel Holmes, the supervisor who issued the plaintiff's final suspension and removal orders, is African American. Although the fact that a supervisor is a member of the same protected class as the plaintiff does not preclude a successful discrimination claim, it substantially weakens any inference of discrimination.  See Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 1002 (5th Cir. 1996) (finding that a decision maker who was the same race as the plaintiff "considerably undermined the probability that race was a factor"); Burch v., WDAS AM/FM, No. Civ. A. 00-4582, 2002 WL 1471703 at *7 (E.D. Pa. June 28, 2002); Dungee v. Northeast Foods, Inc., 940 F. Supp. 682, 688 n.3 (D.N.J. 1996).

were the foundation of his gender discrimination claims.  The
defendant's summary judgment brief addressed both the plaintiff's
suspension on January 13, 2001, and the plaintiff's removal on
February 4, 2002.  The defendant argued that the plaintiff had
not exhausted his remedies as to the 2001 suspension because he
complained only of race discrimination, not gender
discrimination, in his EEO complaint about the suspension.  The
plaintiff clarified at oral argument that his gender
discrimination claim is based only on his removal in 2002, not on
the 2001 suspension.  Therefore, the Court will look at the 2002
removal, but not the 2001 suspension, in considering summary
judgment on the plaintiff's gender discrimination claims.  Oral
Arg. Tr. at 27-29, Sept. 27, 2007; Plf's. Opp. Ex. 35; Ex. 43;
Def's. Br. Ex. 22; Def's. Reply Br. at 4; 29 C.F.R. § 1614.105(b)
(2006).

        The plaintiff has filed a "mixed case" that involves an
adverse personnel action and alleges discrimination under Title
VII, which can be brought directly to the MSPB.  5 U.S.C. § 7702
(2000); Discenza v. England, Civ. No. 05-2660, 2007 WL 150477 at
*6 (D. N.J. Jan. 17, 2007).  He could have pursued an EEO
complaint, but was not required to.  Although Administrative
Judge Rudisill did not address the plaintiff's gender
discrimination claims in his decision, the plaintiff did include
a reference to these claims in his initial complaint.  He wrote

19

that the documents he submitted were "evidence for my sex and race discrimination.  I have been the victim of unfair treatment by a female manager and female supervisor just because I wished not to pursue a romantic involvement.  This has for years left me open to other hostile actions by their friends, especially those in management."  Plf's. Br. Ex. 49; Ex. 43.

The "parameters of the civil action" are set by the scope of the investigation which can "reasonably be expected to grow out of the charge of discrimination."  Doe v. Kohn Nast & Graf, P.C., 866 F. Supp. 190, 196 (E.D. Pa. 1994) (quoting Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976)).  The plaintiff's allegations of sex discrimination in his MSPB complaint are minimal, but are enough to have exhausted his administrative obligations.

### 2. Gender Discrimination

Like claims of race discrimination, gender discrimination claims are analyzed under the McDonnell Douglas burden-shifting framework.  The plaintiff must set forth a prima facie case of gender discrimination by establishing that he was 1) a member of a protected class; 2) qualified for the position; and 3) that someone not in the protected class was treated more favorably.  Scheidemantle v. Slippery Rock Univ., 470 F.3d 535, 539 (3d. Cir. 2007).  The burden then shifts to the defendant to provide a legitimate, non-discriminatory reason for the adverse

employment action.  If the defendant meets that burden, the plaintiff must demonstrate that the proffered reason is merely a pretext for discrimination.  Id.

The plaintiff does not allege that Neel Holmes, Ernestine Geary, and Joseph Bates (the three supervisors involved in issuing his removal notice) based his removal on gender discrimination or harassed him because of his gender.  Rather, he claims that two of his previous supervisors, Simona Brickers and Maria Diaz, discriminated against him on the basis of sex when they issued him discipline, and that the USPS's decision to suspend and then remove the plaintiff was based upon the prior progressive disciplinary notices issued by the two women.  The plaintiff claims that he had told Diaz and Brickers that he did not want a romantic relationship with either of them, and that his rejection spurred them both to issue unfounded discipline. Plf's. Opp. Ex. 2, Neely Dep. Tr. at 39, 42; Ex. 1; Ex. 3.

The plaintiff cites several cases for the proposition that the discriminatory motives of a co-worker or supervisor may "taint" the ultimate decision made by someone else largely on the input of that supervisor.  Delli Santi v. CNA Ins. Cos., 88 F.3d 192, 200 (3d Cir. 1996); Abrams v. Lightolier, 50 F.3d 1204, 1214 (3d Cir. 1995).  However, the plaintiff has not provided any evidence suggesting that either Diaz or Brickers had any input at all into the decision to remove him.  Although the two women may

21

have issued discipline against the plaintiff when they were his supervisors, the plaintiff never denies being late or absent on the days when he received discipline for failure to maintain a regular schedule.  The plaintiff has not established a prima facie case for gender discrimination, nor has he provided any evidence that undermines the defendant's contention that the plaintiff was fired for repeated lateness and absenteeism.

The Court grants summary judgment to the defendant on gender discrimination.

C.   Harassment

In a claim related to his discrimination claims, the plaintiff alleges that he was "subjected to severe and pervasive harassment from his supervisors on the basis of his race and/or gender" and that this harassment led to a hostile work environment.  Am. Compl. ¶¶ 33, 34.  To state a claim under Title VII for a hostile working environment, a plaintiff must establish that:  1) he suffered intentional discrimination because of his race or gender; 2) the discrimination was severe or pervasive; 3) the discrimination detrimentally affected him; 4) the discrimination would detrimentally affect a reasonable person in that position; and 5) the existence of respondeat superior liability.  Jenson v. Potter, 435 F.3d 444, 449 (3d Cir. 2006).

The plaintiff's allegations are similar to those in his

22

gender discrimination claims, namely that he was harassed by
Maria Diaz and Simona Brickers after he told each woman that he
did not want a romantic relationship with her.  The plaintiff
claims that they issued numerous unfounded disciplines, carefully
timing the discipline so that a previous disciplinary series
could not be expunged.  Although both Diaz and Brickers had been
assigned elsewhere in the Post Office, both women returned to
Tour Three just before the plaintiff was removed.  The plaintiff
claims that he contacted Brickers and requested that Diaz not be
his supervisor, but that Brickers resfused.  Plf's. Opp. at 23;
Ex. 2, Neely Dep. Tr. at 284-85; Ex. 25; Ex. 26.

The plaintiff also claims that he was subject to
harassment on the basis of race because white employees (Dever
and Masterson) received more lenient discipline than he did,
which created a hostile environment that had an adverse impact on
the terms and conditions of his employment.  Id. at 25; Ex. 30.

The plaintiff has not made out a prima facie case of
harassment as to either gender or race.  He cannot identify any
conduct "sufficiently severe or pervasive to alter the conditions
of [his] employment and create an abusive working environment."
Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).  He does
not allege harassment by either Brickers or Diaz after 1999, and
neither woman was his supervisor between 2000 and 2002.  Their
connection with his removal is tenuous.  The plaintiff's claim

that he suffered harassment based on race is belied by the fact that for the period surrounding his final suspension and removal his supervisor was also African American.  In addition, he cannot show intentional discrimination based on either race or sex. Def's. Br. Ex. 25; Ex. 26.

The Court will grant summary judgment to the defendant on the harassment claim. _____

_____

D.  Count IV:  Retaliation Under Title VII

Count IV of the complaint alleges that the defendant retaliated against the plaintiff for filing grievances and complaints inside and outside of the USPS and for his EEO claims. The McDonnell Douglas burden-shifting framework also applies to the plaintiff's retaliation claim.  See Shellenberger v. Summit Bancorp, 318 F.3d 183, 187 (3d Cir. 2003); Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500-01 (3d Cir. 1997).

_____A plaintiff can make a prima facie case of retaliation by showing that:  1) he engaged in protected activity; 2) he suffered a materially adverse action (i.e., one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination"); and 3) that there was a causal connection between the protected activity and the adverse action. See Burlington N. & Santa Fe Ry. v. White, 126 S. Ct. 2405, 2415 (2006); Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001).

The plaintiff claims that he was subjected to unfair harassment and discipline and that he opposed these activities by filing grievances and administrative complaints.  The parties do not dispute that some of the plaintiff's complaints were protected activities or that the removal was an adverse action. The defendant contends that the plaintiff cannot establish a causal connection between the two, and that there is no evidence that its legitimate, non-retaliatory reason for its actions is pretext.  The Court agrees.

To prove a causal connection, a plaintiff must show that the protected activity had a "determinative effect" on the employer's decision to terminate him.  Woodson v. Scott Paper Co., 109 F.3d 913, 932 (3d Cir. 1997).  Temporal proximity between an employer's knowledge of protected activity and an adverse employment action can establish causation, but the proximity must be "very close."  Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001).  Even considering the evidence in the light most favorable to the plaintiff, he has not shown that his grievances and complaints had a determinative effect.

The plaintiff claims that the temporal proximity between his complaints and the defendant's adverse actions shows this causal connection.  He cites many instances where a complaint was followed by discipline:  on June 1, 1999, the plaintiff filed an EEO complaint and on August 30, 1999, Brickers

25

put him on emergency placement; in September of 1999 he filed EEO
and discrimination complaints and on October 27, 1999, he
received a letter of warning; in January of 2002 he complained of
sexual harassment and filed an EEO complaint about his suspension
and on February 4, 2002, he was fired.  Plf's Opp. Ex. 11; Ex.
10; Ex. 12; Ex. 14; Ex. 16; Ex. 1; Ex. 3; Ex. 24; Ex. 40.

        The Court acknowledges that there are short spans of
time between the plaintiff's protected activity and his receiving
discipline.  However, it is hard to see how this would not be the
case, given the frequency of the plaintiff's absences, the
frequency with which he received discipline, and the frequency
with which he filed grievances and complaints.  The causation the
plaintiff establishes seems to run the other way:  he was late,
his lateness prompted discipline, the discipline prompted a
complaint or a grievance.

        The plaintiff also cites an e-mail sent from labor
relations officer Joseph Marquis to MDOs Bates and Brickers on
January 4, 2000.  Marquis wrote "We need to deal with [Neely]
every time and come away with a progressive step.  Not get
frustrated and let it pass then try to nail [him] months later.
I'd like to meet, talk and plan . . . ."  Although the message
expresses frustration with the plaintiff, it is dated two years
before the plaintiff was fired and comes from a labor relations
officer who had nothing to do with initiating the discipline the

26

plaintiff received and played no role in his removal.  Plf's.
Opp. Ex. 19; Ex. 4, Bates Dep. Tr. at 88; Ex. 20, Marquis Dep.
Tr. at 137; Ex. 21, Brickers Dep. Tr. at 50.

       Even if the plaintiff could establish a causal
connection between his complaints and his firing, he cannot
establish that the defendant's reason for firing him was
pretextual:  he never denies that he was late or absent on the
days cited in the letters of warning and suspensions.  He has not
proffered evidence from which a finder of fact could reasonably
either disbelieve the employer's reason or believe that an
invidious discriminatory reason was more likely the employer's
motivation.  <u>Fuentes</u>, 32 F.3d at 764.  The defendant is therefore
entitled to summary judgment on the plaintiff's retaliation
claim.


      E.  <u>Count V:  Family and Medical Leave Act</u>

       The plaintiff claims that the defendant has interfered
with his rights under the Family and Medical Leave Act ("FMLA")
by inappropriately denying him FMLA leave.  He argues that the
USPS's decision to terminate his employment was based in part on
at least one day -- January 7, 2002 -- when the plaintiff was
late but for which he was entitled to FMLA protection.  In
addition, he claims that the defendant declined to provide him
with FMLA leave on certain dates when he was eligible:  March 3,

2001, December 5, 2001, January 2, 2002, and January 7, 2002. The Court finds that the plaintiff's claim for March 3, 2001, is barred by the FMLA's statute of limitations; that the plaintiff was not entitled to FMLA leave on December 5, 2001, and January 2, 2002; and that Administrative Judge Rudisill's MSPB decision that the plaintiff was not entitled to FMLA leave on January 7, 2002, was not arbitrary and capricious.  The Court grants summary judgment to the defendant on Count V.

The plaintiff claims that the defendant interfered with his FMLA rights.  To assert an interference claim, a plaintiff must show that:  1) he was entitled to FMLA leave; 2) that an adverse action by the employer interfered with his right to take that leave; and 3) that the employer's adverse action was related to the exercise or attempted exercise of his FMLA rights. Metzler v. Fed. Home Loan Bank of Topeka 464 F.3d 1164, 1180 (10th Cir. 2006).  The plaintiff has not established that he was entitled to FMLA leave.

The FMLA allows an employer to require medical certification for an employee's serious health condition, and allows recertification under certain circumstances.  The plaintiff took FMLA leave intermittently for chronic sinusitis. Employers face some restrictions on requesting recertification for FMLA leave taken intermittently:  "[T]he employer may not request recertification in less than the minimum period specified

28

on the certification as necessary for such leave, unless . . . .
The employer receives information that casts doubt upon the
continuing validity of the certification."  29 C.F.R. §
825.305(a), 825.308(b)(2), (c)(3) (2006); Plf's. Opp. Ex. 60.

  The plaintiff requested FMLA leave on March 3, 2001.
The statute of limitations for an FMLA claim is two years, unless
the violation is willful, in which case it is three years.  29
U.S.C. § 2617(c)(1), (c)(2) (2000).  The plaintiff commenced this
case when he filed an <u>in forma pauperis</u> motion on December 5,
2003.  Unless the defendant's denial of the plaintiff's FMLA
claim was willful, his claim as to that date is time barred.[5]

  On March 17, 2001, the USPS sent the plaintiff a letter
notifying him that his FMLA certification was incomplete and that
he needed to provide medical certification within fifteen days.
On April 5, 2001, the USPS issued a memorandum notifying the
plaintiff that he had failed to provide the medical certification
in the allotted time and that his FMLA request would be denied.
The only medical certification in the record is dated July 27,
2001, four months after the plaintiff's March 3, 2001, request.
Although the plaintiff may be entitled to an inference that he
had a certification at that time, he is not entitled to an

---

  [5] The Supreme Court's standard for willfulness is whether
"the employer either knew or showed reckless disregard for the
matter of whether its conduct was prohibited by the statute."
<u>Trans World Airlines, Inc. v. Thurston</u>, 469 U.S. 111, 113 (1985).

inference that the defendant willfully violated the FMLA when it denied his request for leave based on an incomplete medical certification.  Nothing in the record suggests that the defendant acted knowingly or with reckless disregard when it denied the request.  The Court does not reach the question of whether the defendant violated the plaintiff's FMLA rights when it denied his March 3, 2001, request for FMLA leave because the claim is time barred.  Plf's. Opp. Ex. 56; Plf's. Opp. Ex. 60.

The plaintiff also requested FMLA leave on December 5, 2001, and January 2, 2002.  For each request he received a memorandum from the defendant (on January 3, 2002, and January 24, 2002, respectively) informing him that he had been notified of the requirement to provide medical certification within fifteen days and that he had failed to do so, and that the requested date was not FMLA protected.  Plf's. Opp. Ex. 57; Ex. 58.

The plaintiff argues that the defendant was not entitled to request recertification after the plaintiff had filed his medical certification dated July 27, 2001.  That certification said that the plaintiff's sinusitis was a chronic condition that could incapacitate him for one to three days per episode, with episodes occurring one to three times per month. The plaintiff would be reevaluated in twelve months and was scheduled for routine examinations every three months.  Plf's.

30

Opp. Ex. 60.

The FMLA does not allow an employer to request recertification in less than the minimum period specified on the certification.  It is unclear whether the plaintiff is arguing that this period is three months or twelve months, but the Court does not need to reach this point, because an exception to the minimum period applies when "the employer receives information that casts doubt upon the continuing validity of the certification."  29 C.F.R. § 825.308(b)(2), (c)(3) (2006).  The defendant had information that cast doubt upon the continuing validity of the plaintiff's medical certification and was entitled to request recertification, which the plaintiff refused to provide.  Therefore, the defendant acted appropriately when it denied the plaintiff's claims for FMLA leave on December 5, 2001, and January 2, 2002.

The plaintiff claimed FMLA leave on days when he was late (the plaintiff was 2.7 hours late on December 5, 2001, according to the USPS Absence Analysis).  Nothing in the plaintiff's certification addressed potential tardiness; rather, the certification said that the plaintiff could be incapacitated for one to three days per episode.  Robert Cantz, the FMLA coordinator for the USPS, spoke with Mr. Neely and told him that his medical certification was insufficient to provide justification for FMLA leave when the plaintiff was late for work

31

and asked him to submit a recertification that covered tardiness.
The plaintiff refused.  Def's. Br. Ex. 28; Ex. 37, Cantz Dep. Tr.
at 47-48, 65; Plf's Br. Ex. 60.

The plaintiff's lateness was a chronic problem, and he
provided numerous explanations for his tardiness.  Supervisor
Neel Holmes took notes from his "day in court" with the plaintiff
on February 4, 2002.  The plaintiff provided the following
reasons for his tardiness over a five-month period; some of the
reasons are repeated multiple times:  traffic, accident on I-95,
election day, religious services, doctor's appointment, Army-Navy
game, and physical therapy.  Def's Br. Ex. 29.

The plaintiff's chronic lateness and the fact that his
medical certification did not address potential tardiness were
enough to cast doubt upon the continuing validity of the
plaintiff's certification and entitle the defendant to ask for a
recertification.  The plaintiff did not comply with the rules
governing FMLA leave, and therefore was not entitled to receive
FMLA leave for his absences on December 5, 2001, and January 2,
2002.[6]

---

[6]     The plaintiff contends that the USPS has acknowledged
error in its denial of FMLA leave on these dates because of a
settlement brokered by the Department of Labor after the
plaintiff's removal.  In the settlement, an attorney for the USPS
agreed to give the plaintiff FMLA leave for December 5, 2001,
January 2, 2002, and January 7, 2002.  The Court is not bound by
this settlement.  The Court has performed its own analysis of the
plaintiff's claims and has found that the defendant was entitled
to deny FMLA leave on December 5, 2001, and January 2, 2002.

The plaintiff also claims that he was entitled to FMLA leave on January 7, 2002.  Administrative Judge Rudisill addressed this claim in his Merit Systems Protection Board decision.  He held that the plaintiff "was not entitled to FMLA leave and thus was properly charged with failing to maintain a regular schedule, i.e., lateness, on January 7, 2002" and that even assuming that the plaintiff did have FMLA leave on that date, "the agency's charge would still be sustained because the appellant stipulated that he was late on the other 14 dates listed in the charge."  Plf's. Opp. Ex. 49, at 5.

The plaintiff argues that his current claim is one of interference, rather than a direct claim of an FMLA violation, and that Judge Rudisill did not address his interference claim. However, the plaintiff acknowledges that Judge Rudisill held "that the Defendant did not improperly deny Plaintiff FMLA leave on January 7."  Plf's. Supp. Opp. Br. at 6.  The plaintiff is not entitled to two bites at the apple on his claim to FMLA leave on January 7, 2002.  Judge Rudisill's MSPB decision governs this claim.

The Court reviews the MSPB's decision on this claim under an arbitrary and capricious standard.  Cohen v. Austin, 861 F. Supp. 340, 342 (E.D. Pa. 1994).  Judge Rudisill thoroughly reviewed the evidence in the record and evaluated the credibility

---

Plf's. Br. Ex. 41.

of the witnesses, finding that the plaintiff's testimony about his FMLA claims was "incredible" while the testimony of the USPS witnesses was "straightforward" and "consistent with other record evidence."  Plf's. Br. Ex. 49, at 4.  The plaintiff disagrees with Judge Rudisill's conclusions but does not dispute any of his specific findings or cite to the administrative record to support his assertion that Judge Rudisill is wrong.  The Court upholds Judge Rudisill's MSPB decision as to the denial of the plaintiff's FMLA claim on January 7, 2002.

The Court grants summary judgment to the defendant on the plaintiff's FMLA claims.

F.   Counts VI, VII, and VIII:  Discrimination and Retaliation under Merit Systems Principles and Violation of Due Process

In Counts 6 and 7 the plaintiff claims that he was subject to discrimination and retaliation under Merit Systems principles and the Civil Service Reform Act of 1978 ("CSRA").  The CSRA provides for judicial review of MSPB decisions.  5 U.S.C. § 7703 (2000).  Where a plaintiff alleges discrimination, he may seek relief in District Court, which must apply a de novo standard of review to the MSPB decision on those claims.  5 U.S.C. § 7703(c) (2000).  In a mixed case, where the plaintiff also has non-discrimination claims, the Court reviews the MSPB decision under an arbitrary, capricious, or abuse of discretion

34

standard.  <u>Cohen v. Austin</u>, 861 F. Supp. 340, 342 (E.D. Pa. 1994).

　　　　The Court has already granted summary judgment to the defendant on the plaintiff's race and gender discrimination claims; no additional analysis is required here.  Summary judgment is hereby granted to the defendant in Count 6.

　　　　In Count 7 the plaintiff claims that the USPS retaliated against him for whistleblowing under Merit Systems principles.  He asserts that Administrative Judge Rudisill did not consider two complaints -- an EEO complaint from June 2001, and a complaint to the Department of Labor in December, 2002 -- when he concluded that the plaintiff's complaints did not play a role in the removal decision.  This Court has already considered and rejected the plaintiff's retaliation claims.  The Court finds that the Administrative Judge's analysis of the plaintiff's many other complaints and his conclusion that the USPS would have taken the same action even without the plaintiff's complaints is not arbitrary, capricious, or an abuse of discretion.  Summary judgment is granted to the defendants as to Count 7.

　　　　In Count 8 the plaintiff claims that his due process rights were violated because he was not provided with enough notice or opportunity to remedy his disciplinary situation.  He claims that the Administrative Judge failed to consider "relevant factors" in ruling whether the plaintiff received due process,

such as whether the plaintiff had enough time after the arbitrator's decision upholding his January 13, 2001, suspension to fix his absenteeism.  Plf's. Opp. at 43.  The progressive nature of the discipline the plaintiff received in his years with the USPS means that the plaintiff had many opportunities to reform.  The Court finds that the Administrative Judge's decision that the plaintiff received due process is not arbitrary, capricious, or an abuse of discretion.  Summary judgment is granted to the defendant as to Count 8.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KENT W. NEELY                     :     CIVIL ACTION
                                  :
          v.                      :
                                  :
UNITED STATES POSTAL SERVICE      :     NO. 03-6566


ORDER


        AND NOW, this 12th day of December, 2007, upon

consideration of the defendant's motion for summary judgment

(Docket No. 26), the plaintiff's opposition, the defendant's

reply, and supplementary briefing from both parties, and after

oral argument on September 27, 2007, IT IS HEREBY ORDERED that

the motion is GRANTED for the reasons stated in the accompanying

memorandum.

        Judgment is entered for the defendant and against the

plaintiff.  This case is closed.


                          BY THE COURT:


                          /s/ Mary A. McLaughlin
                          MARY A. McLAUGHLIN, J.